## CIRCUIT COURT OF THE CITY OF ROANOKE

William L. McCollum

v.

Hotel Roanoke and
Virginia Employment Commission

August 17, 1984

By JUDGE JACK B. COULTER

This action comes before this Court on the petition of William L. McCollum, filed on November 9, 1983, pursuant to Virginia Code § 60.1-67.1, for judicial review of the decision of the Virginia Employment Commission of October 11, 1983. The Commission affirmed the similar decision of its Appeals Examiner dated September 9, 1983, who, in turn, had approved the Deputy's Determination of August 10, 1983, denying McCollum unemployment benefits on the grounds that he had been "discharged for misconduct in connection with his work." Answers to the petition were filed by the respondents on February 9 and February 27, 1984.

The grounds upon which McCollum has sought review were originally limited to the contention that the Commission's determination was "contrary to the evidence and the law." Subsequently, on June 12, 1984, McCollum filed an "Addendum" to his petition claiming that "perjurious statements" were made to the Commission and that its decision should be set aside or

remanded because of intrinsic and extrinsic fraud. The affidavit of one Billy Fields was submitted in support of this additional ground.

Oral arguments on the petition were heard on June 14, 1984. A brief on behalf of the petitioner had been filed on April 27, 1984, and one in support of the Commission had been submitted on June 8, 1984. After oral arguments, time to submit additional memoranda was requested and granted. An "Addendum" to the petitioner's original brief was filed on June 26, 1984; the Commission's Supplemental Memorandum of Law was filed on or about July 2, 1984; and a Reply to the Plaintiff's Addendum was submitted by Hotel Roanoke on July 3, 1984. After verbally requesting additional time for a further reply, the petitioner advised the court by letter dated August 9, 1984, that he had nothing further to submit and that the case was ripe for decision.

## THE THRESHOLD ISSUES

There are two threshold issues that should be disposed of first: the claim of fraud and the scope of this review.

The judicial review permitted by the statute authorizing it is narrowly limited, in the absence of fraud, to questions of law. Section 60.1-67.1 provides in pertinent part:

> In any judicial proceedings under this chapter, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of such court shall be confined to questions of law.

The petitioner has suggested that fraud, intrinsic and extrinsic, has been committed and argues strenuously that the matter should be remanded because of such fraud.

Issues raised by accusations of fraud were thoroughly discussed in the recent case of Jones v. Willard, 224 Va. 602 (1983). In that case there was a dispute as to whether or not the claimant had been fired or only temporarily relieved of her duties because she had closed her employer's store fifteen minutes early one night due to a claimed emergency. Accepting the employer's version, the Commission found that the claimant had not accepted her employer's invitation to explain her actions and had left her work voluntarily without good cause. On appeal to the Circuit Court the claimant proferred evidence that her immediate supervisor had, in fact, fired her, that her dismissal was "final and irrevocable," but that the supervisor had been persuaded by her employer to support his position before the Commission that the claimant had only been temporarily suspended pending the invitation to discuss her actions.

In his opinion for a unanimous court, Justice Poff distinguished intrinsic and extrinsic fraud, determined that the judgment of the Commission may have been procured by extrinsic fraud, held that the trial court had no jurisdiction to adjudicate de novo the issue of fraud, but did have the implied power to remand the case for a determination of that issue. Since "justice demands that course," a remand to the Commission was directed, the precise holding being:

> We hold that when a party aggrieved by a decision of the Virginia Employment Commission alleges in his petition for review that the decision was procured by extrinsic fraud committed by the successful party and submits with the Petition a proffer of proof, verified by affidavits of witnesses, the circuit court shall remand the cause to the Commission for a hearing on the issue if, upon review of the proffer and argument by counsel, the court finds the proffer sufficient as a matter of law to establish a prima facie case of such fraud.

But the claim of McCollum in the case at bar is that the witness for the employer committed perjury. The court in Jones clearly identified perjury as intrinsic fraud, which it further held was curable only by direct attack before judgment had become final. In other words, if the fraud claimed by the petitioner is based on perjury, then the fraud was intrinsic, is voidable only, and cannot be corrected on appeal.

We need not address this issue of fraud, however, nor the wisdom, equity or applicability of the apparent doctrine of McClung v. Folks, 126 Va. 259 (1919), because the Commission's Findings of Fact assume the very substance of the alleged perjury. The Commission affirmatively found as fact "that someone from the hotel had contacted them (the jailer) and confirmed the fact that he (McCollum) was in jail." It is, in other words, an established fact that the hotel knew that McCollum was in jail irrespective of and notwithstanding the testimony of Ms. Hoffman that, "We did not know where he was." (T. 4, 8) The allegations of fraud, therefore, need not detain us further other than to express disappointment in the hotel's rather cavalier and irresponsible attitude in its incomplete investigation of the facts.

The other preliminary question to resolve is the extent of this court's jurisdiction on the review of an administrative ruling. Absent fraud, as we all know, the scope of such review is narrowly confined to questions of law. Is the determination by the Commission that McCollum was guilty of "misconduct connected with his work" a matter of fact or a question of law?

Taking as conclusive the facts as found by the Commission, the application of those facts to the standard of work-connected misconduct can be a question of law: either that such facts do constitute misconduct as a matter of law or that they do not. Accordingly, whether or not the Commission properly applied the facts that it found to the standard of work-connected misconduct is within the proper limits of judicial

review. As observed in <u>Donahue</u> v. <u>Commonwealth of Pennsylvania, Unemployment Compensation Board of Review</u>, 400 A.2d 251 (Pa. 1979), one of the cases cited by the Commission: "An employee's action leading to his dismissal rises to the level of willful misconduct and a question of law is subject to our review." (This is an exact quotation, but is very unartfully and ungrammatically stated. The meaning is clear, but it would be better stated as follows: "Whether or not an employee's action leading to his dismissal rises to the level of willful misconduct is a question of law and is subject to our review.") In any event, it is further noted in <u>Donahue</u>: "The question of whether he notified Employer of his impending absence is one of fact, <u>while its sufficiency is one of law</u>." (Emphasis added).

Testing the sufficiency of the Commission's conclusion, therefore, is a question of law and is properly reviewable by this court.

## THE BASIC ISSUE AND ITS RESOLUTION

The basic issue, then, pure and simple, is whether or not the facts supported the Commission's conclusion that the claimant's failure to report his absence personally in technical violation of a work rule, clearly reasonable, was "misconduct in connection with his work."

Taking the facts as we must from the Commission's formal findings and the record, the claimant had been employed at Hotel Roanoke from August 18, 1978, through May 27, 1983. He was captain of their dining room, working from 3:30 p.m. to midnight, at an annual pay of about $10,000.

He last worked on Wednesday, May 18, 1983. He was next scheduled to return to work on Saturday, May 21, 1983, but the hotel was contacted by a lady who informed them that the claimant would be absent for two days due to personal illness. His absences for these two days are not in issue, even though the report was made by a third party and not the claimant personally,

apparently violating the same work rule which brought about his unfortunate dismissal.

On Monday, May 23, 1983, the claimant was put in jail on multiple charges stemming from a domestic dispute, where he remained until Friday, June 10, 1983. His employment was terminated on Wednesday, June 1, 1983. The record is clear that the charges brought against the claimant, whatever their background, were not prosecuted. If there is any validity to the doctrine that an accused is presumptively innocent, we must conclude, since there was no prosecution and clearly no conviction, that these charges were groundless. Being of domestic origin, they could have just as easily been the fault of the one who reached the courthouse first. This "misconduct," of course, is not and cannot be the basis for the Commission's findings. Whatever the cause of the family fracas, such "misconduct," and of being arrested and of not being able to post bond, was not "misconduct connected with his work" at Hotel Roanoke. McCollum was fired, not because he was incarcerated, but because he failed to report personally where he was, even though the hotel had "confirmed the fact that he was in jail."

The leading Virginia case on "misconduct" is Branch v. Virginia Employment Commission, 219 Va. 609 (1978), in which the court, construing the language in the statute for the first time, defined misconduct as follows:

> In our view, an employee is guilty of "misconduct connected with his work" when he deliberately violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a willful disregard of those interests and the duties and obligations he owes his employer. See generally, 76 Am. Jur. 2d Unemployment Compensation § 52 (1975).

In Branch the employee's wages had been garnisheed on three separate occasions within a two-year period: On August 27, 1974; July 24, 1974; and January 6, 1976. The company had a rule, known to the employee, that an employee whose wages were subject to three garnishments within twelve months of each other was automatically terminated. The Court upheld the Commission's decision that such conduct was "misconduct connected with his work," noting:

> We believe the Commission's construction is substantially correct. Ordinarily, the way an employee manages his debts is a personal and private matter unconnected with his work. It is a different matter, however, when he mismanages his debts in a manner which impairs the status or function of the employer-employee relationship to the employer's detriment. When an employee forces his creditors to garnish his earnings, he exposes his employer to continuing service of judicial process, complicates his administrative burden, and increases the cost of conducting his business. Moreover, when the employer withholds a portion of a paycheck, the depressing effect on employee morale tends to erode the quality of the work product.

> We are of opinion that the conduct of an employee which results in garnishment is conduct connected with his work and where, as here, such conduct is recurrent, knowingly violative of a company rule, and unexcused by mitigating circumstances, it constitutes misconduct within the intendment of the statute.

The Court, nonetheless, found that the company rule was not, in fact, actually violated as the three garnishments were not "within twelve months of each other." Hence, on such technicality the Commission's decision was reversed.

The emphasis in the above definition of misconduct is the <u>deliberate</u> violation of a company rule. It also makes allowances for mitigating circumstances. In the case before us, there is no suggestion that the company rule was unreasonable or that it did not serve a legitimate business interest of the employer. Of course, as the Appeals Examiner observed in his opinion which the Commission accepted:

> The employer has a right to expect regular attendance of an employee and to be notified when an employee cannot report for work so that work production may be properly controlled.

But the employer <u>was</u> notified, irrespective of by whom, that the employee could not report for work. "THE HOTEL HAD . . . CONFIRMED THE FACT THAT HE WAS IN JAIL." What further information would the hotel have obtained by a direct report from the claimant OF A FACT THEY HAD ALREADY CONFIRMED?

The fact situation in the case at bar is a far cry from the <u>Branch</u> case where the claimant had three times affirmatively disrupted his employer's affairs through acts clearly deliberate and intentional. It is also clearly distinguishable from the cases cited by the respondents in which notices of absences due to illnesses were not given as required. In those cases the employers did not otherwise have the information the notices would have given.

Under the facts at issue it is only reasonable to perceive that *McCollum* had been *lulled into believing* that the purpose of the rule of notification had been accomplished; that a call-in by a third party had only recently been acceptable to his employer; that being a prisoner, obviously subject to various restraints, both real and imagined, it might have been somewhat foolhardy for him to have contested his jailer's representations that his employer knew where he was; and that, as is generally known, the freedom of prisoners to make personal phone calls is limited, with priorities understandably given to efforts to obtain

counsel or bond. To hold, therefore, under such extenuating circumstances that McCollum's failure to comply with the strict letter of the company rule was an act of deliberate and willful misconduct is stretching the concept of misconduct beyond its natural boundaries. As observed in 76 Am. Jur. 2d, Unemployment Compensation, § 52, 946: "The statutory term 'misconduct' should not be so literally construed as to effect a forfeiture of benefits by an employee except in clear instances; rather, the term should be construed in a manner least favorable to working a forfeiture so as to minimize the penal character of the provision of excluding cases not clearly intended to be within the exception."

"Misconduct" by Webster definition means "intentional wrongdoing." It is obvious that failure to comply with a reasonable company rule could be construed to be a "wrong," a "wrong" because the interests of the company have been thwarted or frustrated by the lack of knowledge which the requirement of notice of anticipated absences is designed to provide. But when the knowledge which the notice would have given has already been received, when it has actually been confirmed, then it seems somewhat cruel and unjust to brand the failure to report that which is already known as an intentional and deliberate act of wrongdoing. To repeat: The Commission found as fact that "the hotel had confirmed" that McCollum was in jail. The significance of such confirmation becomes more apparent when the definition of confirmed is brought to bear. Confirmed means, according to Webster, "verified, authenticated, validated, the removal of doubts by an authoritative statement or indisputable fact." In other words, something must have preceded that which was being confirmed: there was more than one report!

Even if, however, the petitioner is to be considered guilty of misconduct in not telling his employer personally what it already knew, the overall circumstances were of such nature to mitigate his neglect completely. From the facts before us, he did not go to work initially because he was put in jail, forcibly

and involuntarily deprived of his freedom to act, for conduct which later proved to be totally unworthy of prosecution.

## CONCLUSION

This court is keenly conscious of the very narrow limitations of its role in reviewing the decisions of administrative tribunals. It is not supposed to substitute its judgment on matters of fact as if it were a super-agency; it is not to be a thirteenth juror to veto singlehandedly the judgment of a specialized body dedicated to the administration and resolution of problems peculiarly within its professional expertise. But when, as here, fundamental notions of what is right and just are so patently offended; when, as here, concepts of natural justice cry out for relief, it becomes the duty of the court to rectify the wrong. Such is our function.

The failure of the claimant in the case at bar to give notice to his employer personally of his incarceration when the employer already knew of this fact, particularly when the apparent grounds for the incarceration turned out to be without merit, was not as a matter of law such deliberate misconduct in connection with his work as to justify his disqualification for unemployment benefits. The decision of the Commission is, accordingly, reversed.